May it please the court, I'm in this case representing, my name is Eitan Kaslyanich, I'm representing Arthur Coffman. This is a different case, it was a different ALJ. It's, the errors are surprisingly similar to the previous case. Now, what makes this case a little bit different is Mr. Coffman has physical problems, he has mental problems, both. And his treating physician is Dr. Diller. And Dr. Diller submitted records and a statement showing that he believed that, describing the extent of Mr. Coffman's physical impairments and the limitations that were related to those. But in the ALJ's decision, the ALJ found that Mr. Coffman did not even have a severe physical impairment, no severe impairment at all, physical impairment. He did find that he had severe mental impairments and because of that he proceeded beyond Step 2 in his analysis. And I'd like to start off with harmless error again. We've got case law that says if you don't identify an impairment at Step 2, but you go on to consider it and evaluate it at Steps 3 through 5, that is harmless error. And I agree with that analysis. However, in this case, the ALJ's analysis of the evidence from Dr. Diller and his analysis of the evidence regarding Mr. Coffman's physical impairments and limitations doesn't pass muster. It doesn't, it's not valid analysis. The part of the problem with his analysis of Dr. Diller's opinion is although Dr. Diller was a treating physician, whose opinion was not contradicted and was really not inconsistent with the other evidence of record, the ALJ under the regulations should have given controlling weight to his opinion. Can I ask you a question on that, please? Yes. Did the ALJ make a negative credibility decision on Mr. Coffman? Yes, he did. And does that have bearing on the significance of that treating doctor's opinion? No, it does not. And the reason for that is Dr. Diller had access to MRI reports, X-rays, clinical evaluation, examinations. He met with Mr. Coffman and examined him. He based his opinion on his examination. And so to say that, and once again, we actually, we challenge and we dispute the credibility analysis here because, for a number of reasons, but no, the mere fact that the ALJ found him not credible doesn't mean that this, that doesn't justify rejecting what Dr. Diller had to say. Now, I stated at first that Dr. Diller's opinion should have been given controlling weight. At the very least, it should have been given deference. Instead, it was given no weight. And I think that's a reversible error here. Now, the second issue also dovetails with the last case, which involves the weight that the ALJ gave to the opinion of Sylvia Lagden, who was the treating nurse practitioner. You see, we've got a lot of people who are getting psychiatric care from nurse practitioners, which is what Social Security ruling 0603P acknowledges. People can't get to psychiatrists or psychologists, nurse practitioners, which is why the ruling states that this has to be considered, and it can't be rejected just because it's not acceptable medical source evidence. Anyway, Ms. Lagden submitted a long statement describing her opinion about Mr. Coffman's limitations. And the ALJ, of course, rejected it completely, just rejected her opinion entirely. Now, what's interesting about it is her opinion is actually consistent with the opinions of every psychologist that examined Mr. Coffman. He'd been examined by Dr. Van Heunissen, Dr. Mangione-Landy, Dr. McCollum, Dr. Brose, Dr. Myers. All of them opined that Mr. Coffman had some marked impairments in his mental functioning ability, and the ALJ rejected all of the evidence, all of the evidence from every treating source, all of the evidence from every examining source. I should modify that a little bit. He rejected all the evidence that supported Mr. Coffman's disability claim. So he would look at a report, Dr. McCollum, and say, I accept this part, but I don't accept that part, because that part supports it, so that part's no good. Now, the reasons that he gives for doing that just don't, once again, they're not legitimate reasons. There are some significant errors in the ALJ's analysis of Mr. Coffman's substance abuse and his claim that he misreported substance abuse to this person or that person, and therefore this psychologist's opinion is wrong and that one's wrong, and it ends up adding up to they're all wrong. He instead relied on the opinions of two non-examining psychologists, and their opinions, standing alone, aren't even substantial evidence to support an ALJ's decision. What's also interesting here is that after his hearing, Mr. Coffman continued to get medical treatment, and he submitted to the Appeals Council additional evidence which showed that, hey, he was continuing to have physical problems, he was continuing to have mental problems. And so that evidence as well supports Mr. Coffman's disability claim. So I want to jump back to the issue of credibility, and this is a problem I see in practically every ALJ decision these days, which is there's a requirement in this circuit, and really it's a national requirement, that when an ALJ rejects, if an ALJ is to reject a claimant's credibility, they can't just say I reject it. They've got to say which part of their testimony they're rejecting, and you have to link it to why you're rejecting it, your reasoning. You can't just say I reject their credibility because their daily activities are too much. Well, that was done here, of course, and that wasn't correct because his daily activities are actually quite limited. But not only do they have to point to link this, provide specific and convincing reasons, but they also have to link them to the testimony they're rejecting, and it's not enough if their reasons are just supported by substantial evidence. They have to be convincing reasons supported by substantial evidence. And in this case, there is admittedly some confusion regarding Mr. Kauffman's substance abuse and his past substance abuse, and that's not entirely clear, and that's something that should be clarified at a new hearing. But the evidence here, even though that's not clear, the confusion on that issue isn't, I don't believe, sufficient to justify rejecting all of his testimony about all of the problems that he has, and that's how it was used here. It was basically used not just to reject everything he had to say about his problems. It was also used to reject everything that every treating and examining physician had to say about his problems, both physical and mental. If you don't have any questions right now, I would like to reserve time for rebuttal. No, that's fine. I hear no questions. So you've got a good segment for rebuttal left. And we'll hear from Mr. Ekelberg. Mr. Ekelberg. Good morning, Your Honors. Good morning, Madam Clerk. Good morning, Counsel. Brett Ekelberg on behalf of Michael J. Astro, Commissioner of Social Security. Your Honor, Commissioner is here to appeal to this court to affirm the ALJ's decision is supported by substantial evidence and free of legal error. The district court in reviewing this case began its analysis by saying the seminal issue in this case is credibility. And the Commissioner agrees with that. Mr. Kaufman disputes the credibility analysis, and I would like to quickly and efficiently run through the reasons that the ALJ gave for its credibility analysis because they shed light on the weight that he gave to the various treating sources and evaluating sources and other medical sources within this record. If you look at this case, when the district court says credibility is a seminal issue, you can look at the very beginning of this record, at the first medical record, where you have Klayman talking to Cynthia Potts, a therapist, and Klayman talking to an evaluating psychologist, Dr. Van Hoomissen. And in this conversation, he admits to using crank, alcohol, meth, inhaling butane and gas, using marijuana. Contrast this in terms of looking at the significance and the centrality of credibility in this case. Contrast this with page 279, excerpt of record, where Mr. Kaufman is filling out a medical history report, which will be used by Nurse Lagden because it's at Cascade Mental Health. At 279, he's given an option to disclose his use or history of other substances. He has ten substances, including meth and alcohol, tobacco. He denies using nine out of ten of those substances and checks yes only to using cigarettes. What this effect, the effect of this type of lack of candor with treating providers and evaluating psychologists, in this instance, translates into Nurse Lagden having no idea about this substance use and its impact on her evaluation. She handwrites in her form on page 315 of the record. She handwrites that there's no history of substance abuse here. And I would draw that attention to your honors because, again, it speaks to the centrality and the degree to which Mr. Kaufman, in this case, really compromised the ability of his physicians to adequately assess all of his impairments. To help the court, there was an earlier question about the different sources of authority for analyzing other sorts. I'm just going to move and do the credibility analysis and talk about its effect on different treating and examining physicians as they go along. Happy to entertain questions at any point from your honors. But for the court's sake, SSR 0603P does apply. In terms of looking at how the nurse practitioner is defined as an other medical source, not an acceptable medical source, the appropriate citation would be 20 CFR 404.1513A, and its equivalent under the SSI regulation is 416.913A. The factors that NAOJ is to apply to analyzing another source are available at 404.1527D and 416.927D. These were contained in Commissioner's Brief, your honors, so they would be available to you on that site and you would have access to you. But as is stated in 0603P, the evaluation of an opinion from an other source, a not acceptable medical source, depends on the particular facts in each case. And, again, this gets back to the overarching approach that this court takes in terms of analyzing these cases. You look at the total record, as was done in Batson, for instance. You're looking at the total record when you're analyzing the case. And so they say that you want to evaluate a non-acceptable source based on the facts in each case. And a germane reason is sufficient to discount an opinion from a non-acceptable medical source, according to Turner. In this case, we go back to looking at the significance of credibility. And notice, for instance, that Dr. McCollum, he points out himself in analyzing and assessing and doing a psychological evaluation of Mr. Kaufman, he notes the inconsistencies of his statements and it runs throughout his evaluation, multiple inconsistencies. And you have a drug-seeking behavior as well, which is noted by Dr. Stromberg. Mr. Kaufman comes in to see Dr. Stromberg seeking narcotics. He tells Dr. Stromberg, leveraging his treating physician, he tells Dr. Stromberg, I was sent here to get narcotics to tide me over. Dr. Stromberg disbelieves that, checks it, and ends up finding out there's a drug alert that informs him that this individual has been seeking narcotics in multiple locations from multiple care providers. So he does not give him narcotics. What this signals in, again, is the intentional behavior in order to achieve an external gain. And that is what the ALJ noticed and remarked on when he talked about the disability conviction, the illness conviction. And if you look, Your Honors, at Dr. Judisch's interaction with Mr. Kaufman, he comes in complaining of left shoulder pain. And Dr. Judisch cannot find an underlying objective criteria that explains his complaints. And, in fact, he notes in the record that Dr. Baugh conducted an EMG test on his left shoulder and did not find any thoracic nerve problems and no underlying impairment. He looks and sees that Dr. Sara administered an MRI exam and found only mild cervical degeneration in his neck. And he ends up determining that this individual is displaying illness conviction, which is not a psychological disorder. It is an intentional behavior designed to achieve, in this case, as we saw with Dr. Stromberg, narcotics or possibly other benefits that might arise from these complaints. It's intentional. And you can ascertain this further by looking at what happens next when Mr. Kaufman leaves Dr. Judisch after this exam. He's a specialist in rehabilitative medicine, someone who's going to get somebody rehabilitated. And his opinion was we need to conduct therapy, you need to get into therapy, get yourself ready to go again. He then goes and sees Dr. Huch. And he comes in wearing what Dr. Huch describes as an immobilizer on his left arm. And Dr. Huch, you can hear her voice in her statement, in her writing when you read the report. She says at the end, you know, what we need to do is get you into physical therapy and we need to get you to move this arm. He's displaying self-limiting behavior. And she has him take off the immobilizer and he exhibits no pain. And then when he tries to move his arm, then he displays pain behavior. But she says that you need to take advantage of therapy, you need to do it. Interestingly enough, though, Dr. Huch points out that Mr. Kaufman refuses to go back to Dr. Judisch. He will not return to Dr. Judisch, she notes. He would be one of the individuals who would be best positioned to get him rehabilitated and ready to work again. So I share that with Your Honors and point that out to you. I just put, what do we do with Dr. Diller's testimony? Correct, Your Honor. Dr. Diller's testimony, not entitled to controlling weight unless it is well supported. A treating physician's opinion is not entitled to controlling weight unless it is well supported in the record and not inconsistent with other evidence in the record. Again, looking at the totality of the circumstances. Now the ALJ gave specific and legitimate reasons, clear and convincing reasons even, for discounting Dr. Diller's opinion. You see the ALJ reflecting on Dr. Diller's opinion. He is conscious of the weight that you would typically give to it on page 18 of the excerpts of the record. And he is saying that typically you give a treating physician's opinion significant weight. However, in this case, the ALJ could not do it in good conscience, in the totality of the circumstances of this case. Why? Because he found that Dr. Diller was unaware of Mr. Kauffman's drug-seeking behavior, Dr. Diller did not address Mr. Kauffman's illness conviction that Dr. Judisch had found, and Dr. Diller lacked objective findings. He did not address the lack of objective findings. Now let's look at Dr. Diller's evaluations, and you will see that these very factors are evidenced in them, and the ALJ is on solid ground in terms of discounting Dr. Diller's opinion. For instance, the December 2007 physical evaluation done by Dr. Diller appears on page 264 through 267. The comparison point would be the November 2008 physical evaluation, which was submitted post-hearing, 332, 335. I think he's answered your question. Okay. Thank you, Your Honor. Your Honor, I might, if there's no objection, might continue with that analysis so that I could just share again some further substantiation for the ALJ's point. He does, in that December 2007 physical evaluation, identify left shoulder, neck, and lumbar pain as things that are of marked severity for this individual, but he notes on page 265 there's no objective basis noted for where he's coming up with these limitations. He does talk about bone spurs in the cervical spine, but that would seem to harken back to Dr. Sarah's MRI view, which found just mild degenerative changes in the neck. Dr. Diller, on page 267, says he has no awareness of alcohol or drug history. He's checking no history, which is what the ALJ pointed out. Then what's his recommendation? To seek physical therapy, and that the duration of the symptoms at this point is four months. It's going to last four months, he says, which doesn't meet the durational requirement under our regulations. But one of the other credibility factors which puts this in context in looking at the entire record is the ALJ's finding, supported by substantial evidence, that Mr. Coffman did not comply with his recommended treatment, specifically physical therapy. I might note for the court, if there's a question, because oftentimes when we have these cases some folks can't afford physical therapy. There's no definitive statement, I can afford physical therapy in this record. What there is, is Dr. Judisch conscious, and he states that Mr. Coffman has limited physical therapy. He's not saying he doesn't have any, but I'd want to be conscious if he has limited physical therapy that he can get to that. But four physicians recommended therapy, and there's no evidence that he followed through on these for his physical complaints. Dr. Ma, Dr. Judisch, Dr. Hughes, Dr. Diller even. So that is why the ALJ gave Dr. Diller, discounted Dr. Diller's opinion. That is why that happened. As for Dr. McCollum, the question arises, why give Dr. McCollum great weight? To understand the ALJ's rating and evaluation of medical evidence in this particular record, the court should look at pages 18 and then 20 through 21 of the ALJ's decision. As the ALJ explains, this is an interesting case where the ALJ states, I considered the multiple opinions in the record, and the ALJ specifically refers to a number of psychological evaluations, but I found it difficult to rate and weigh their opinion due to Mr. Coffman's inconsistency and lack of credibility, which we've discussed, and lack of objective findings. And the ALJ found that he could not rely on the conclusions drawn by Mr. Coffman's care providers. These statements are interesting and they're informative and they're insightful into the ALJ's treatment of Dr. McCollum's analysis. And if you were to look on page 15, excerpt of record 15, ALJ gave Dr. McCollum great weight and he comes to the ultimate conclusion. Remember, ALJ said we can't rely on the ultimate conclusions, and in fact that's reserved to the commissioner. Dr. McCollum's ultimate conclusion was that the claimant's prognosis for work was poor due to his substance abuse, but with treatment he might be able to work. What's critical is that Dr. McCollum did not identify a mental limitation for the claimant. He saw that he would have mild limitations to perform simple, repetitive tasks. He would have adequate pace and perseverance, although slow but appropriate. Mild to moderate limitations in dealing with day-to-day work stress. These were consistent with the other reliable source within this record, the state agency non-examining, non-treating physician, Dr. Van Dam, who said he could perform mild routine tasks and slightly more complex tasks as long as he was given a chance for separateness away from the public. And that's indeed what the ALJ did. Thank you. In the absence of any questions. I have no questions. Thank you very much. Arthur, can I see that? Do you want to show me that? Show me that paper. Oh, yeah. Okay, we have a question on Cal. Go ahead and finish that. Okay. I'd like to start first by addressing the issue of the legal standard for review of medical opinion evidence from a treating nurse practitioner who's not an acceptable medical source. Government argues that under Turner, the ALJ is only required to state a germane reason for rejecting this evidence because it is lay evidence. I argue that that's not true. In Turner, the court did not even discuss Social Security ruling 0603P. And as a result, it did not really reconcile whether or not in light of Social Security ruling 0603P, a germane reason is good enough for rejecting the opinion of a treating nurse practitioner. So I think that that standard has really not been set. With regard to the government's claims that Mr. Kaufman did not participate in physical therapy, I respond to it in my reply brief. The claim is false. He has participated in physical therapy several times at least. The records that were submitted to the Appeals Council show evidence of some of the follow-through on that. And he had done it before. I can't say why the records. I was not representing him at his hearing, and I can't say why the records from that didn't make it into the file. But he had participated before. He had described it, and when they went and got it again, they knew he had participated before. I want to point to something that's obviously false in the ALJ's decision. The ALJ states that Mr. Kaufman, quote, has no objective evidence of impairment. And he's talking about physical impairment. And I'd like to point back to the evidence, and it's in my briefs, about him having shoulder atrophy. That's what Dr. Hoosh came up with. She examined him, she evaluated him, and she said he has shoulder atrophy. That's why he needed physical therapy. To say that he has no objective evidence is just a false statement, and that's not something that an ALJ is supposed to do. You can't reject opinion evidence based on making stuff up, and that's what he did on that issue. With regard to Dr. Myers' opinion, I was somewhat hesitant to even discuss Dr. Myers originally, because in district court, there was no evidence that this evidence had ever been submitted, had ever been admitted into the record. And it was only when the government filed their brief in this court that they provided evidence that, hey, here's the paper trail. This actually was part of the record. It is properly before the court. So I didn't even focus on it in my opening brief here or in either of my briefs in district court. But interestingly, the ALJ doesn't reject Dr. Myers' opinion. This was the most recent psychological evaluation of Dr. Kaufman by an examining psychologist, and she found that some of his memory testing was in the first and second percentile, and he had trouble remembering, and his cognitive memory problems along with his emotional problems would make employment difficult. I believe this was an evaluation that was actually done at the request of the ALJ. So the ALJ discusses that evidence, but then doesn't credit it. Similarly, there was a problem with the evidence from Dr. McCollum, where he stated that with treatment, Mr. Kaufman might be able to return to work. And the ALJ, in his decision, wrote, in one place he said might, and in another place he said should be able to return to work. I see those as that's a difference, and government in their briefs have not seen that to be a significant difference. With regard to the issue of credibility and what we've got here, Mr. Kaufman has, when he first went to the doctor, he admitted to his history of drug abuse, and it's not a pretty picture. I can't stand here and explain why, in going to other evaluations, he didn't go in to describe accurately exactly when he used and what he used and all of that. To some extent, it might have been his memory, it's distant enough that he just didn't want to think about it, he may have been embarrassed about it, I don't know. But the ALJ didn't ask him about any of that either. And it seems to me that to say that every single psychologist that examined him, and every psychologist or psychiatric nurse that treated him, and his treating physician as well, everyone got everything wrong because he wasn't out front about his history of drug abuse. I think that's a stretch. I don't think that's a legitimate reason to fully reject all of his testimony, and I think it's certainly not a legitimate reason to reject all of the medical evidence. We'll review the record. Okay. And I believe that's it. This gets back to Dr. Diller. I'd just like to close with that. Dr. Diller is his treating physician. He's not making stuff up. He's treating the guy, and he could see what was wrong with him. And to say that ALJ can just reject it for the reasons he did, his reasons are not convincing, they're not legitimate even. And that's all. Okay, thank you, Mr. Gnatch. Thank you. This was very nicely argued on both sides, and the Kauffman case shall be submitted.
judges: Schroeder, Alarcon, Gould